IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMELL FAGAN,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 24-5519 |
| | : | |
| **JAQUANA GOODE**, *et al.*, | : | |
| Defendants. | : | |

<u>**MEMORANDUM**</u>

**MURPHY, J.**                                                                                                                           **January 7, 2025**

Jamell Fagan, a prisoner currently in custody at SCI Frackville, filed this *pro se* civil rights action naming five defendants employed at the Curran Fromhold Correctional Facility (CFCF) in Philadelphia, specifically two correctional officers, two sergeants, and the Superintendent of the facility.[1] Each defendant is named in his or her individual and official capacities. Mr. Fagan also seeks leave to proceed *in forma pauperis*. For the following reasons, we will grant Mr. Fagan leave to proceed *in forma pauperis* and dismiss the complaint.

**I.    FACTUAL ALLEGATIONS**[2]

Mr. Fagan's allegations are brief. He asserts that he arrived at CFCF in March 2024 and was placed in "quarantine housing unit B23" for one month with multiple prisoners. DI 2 at 12. He describes this area as a "closet-type multi-purpose room" that provides each prisoner "with

---

[1] He names Jaquana Goode and four "John Doe" defendants.

[2] Mr. Fagan used the form complaint available to unrepresented litigants to file his claims and included a typewritten attachment. DI 2. We consider the entire submission to constitute the complaint and adopt the pagination supplied by the CM/ECF docketing system. The factual allegations set forth in this memorandum are taken from complaint. Where we quote from the complaint, punctuation, spelling, and capitalization errors will be cleaned up. We may also consider matters of public record when conducting a screening under § 1915. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

less than sixty square feet of floor space which is in violation of the Pennsylvania administrative codes, American Correctional Association (ACA), American Bar Association (ABA), and U.S. Department of Justice (DOJ) Standards." *Id*. The area has "bunk beds with no ladders, no desks/chairs, no shelves, hooks, or cabinets for property," and "the room cannot be opened electronically by staff and has to be manually locked and unlocked quarters which presents a fire hazard." *Id*. Mr. Fagan was then moved into the A23 housing unit, which has the "exact same type of living quarters" as B23, for two months until he was transferred to a state facility. *Id*. Mr. Fagan contends that these conditions of confinement violated his right against cruel and unusual punishment during his incarceration at CFCF from March 2024 through June 2024.[3] *Id*. at 5, 15. He seeks a declaration that his rights have been violated,[4] money damages, and a "permanent injunction implementing an adequate grievance system and employees to present a plan to the Court to provide adequate housing to prisoners." *Id*. at 13.

---

[3] Public records indicate that Mr. Fagan was housed at CFCF as a convicted prisoner. *See Commonwealth v. Fagan*, CP-51-CR-0001675-2021 (C.P. Philadelphia). Although Mr. Fagan frames his claim as violations of the Eighth and Fourteenth Amendments, DI 2 at 13, as a convicted prisoner at CFCF his claim is properly analyzed under the Eighth Amendment. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) (stating the Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement).

[4] The request for a declaration that Mr. Fagan's rights have been violated must be dismissed. Declaratory relief is unavailable to adjudicate past conduct, so Mr. Fagan's request for this declaratory relief is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

2

II.     **STANDARD OF REVIEW**

We grant Mr. Fagan leave to proceed *in forma pauperis*.[5]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires us to dismiss the complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires courts to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  "At this early stage of the litigation,' '[w]e accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)) *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.  As Mr. Fagan is proceeding *pro se*, we construe his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

III.    **DISCUSSION**

Mr. Fagan asserts constitutional claims.  The vehicle by which federal constitutional claims against state and local government officials may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

---

[5] Because Mr. Fagan is a prisoner, he must still pay the $350 filing fee for this case in installments as required by the Prison Litigation Reform Act.

the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law.").

### A. Official Capacity Claims

Mr. Fagan asserts official capacity claims against Correctional Officer Goode and four John Doe defendants, all of whom appear to be employees of the City of Philadelphia at CFCF.[6] Claims against City officials named in their official capacity are indistinguishable from claims against the City. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978))). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell*, 436 U.S. at 694; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the

---

[6] Mr. Fagan checked a box on his form indicating that he asserts claims against federal actor defendants. DI 2 at 3. However, Officer Goode and the John Doe defendants are allegedly employed by the City of Philadelphia at CFCF and there is no basis for liability under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971) (holding that a remedy is available for a federal agent's violation of a citizen's Fourth Amendment right to be free from warrantless searches and seizures). Even if *Bivens* did apply, which it does not, the Third Circuit has expressly refused to extend *Bivens* to Eighth Amendment conditions of confinement claims brought by federally convicted prisoners. *Kalu v. Spaulding*, 113 F.4th 311, 339-40 (3d Cir. 2024).

pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). It is not enough, however, to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.* Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support a claim against the City. *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases). "It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013).

Mr. Fagan fails to allege that he was injured due to a policy or custom of the City. Indeed, he fails to make any policy allegations at all. For this reason, all official capacity claims for money damages must be dismissed. Because we immediately conclude that any underlying claims are not plausible, the dismissal will be with prejudice.

## B. Individual Capacity Claims

### 1. Overcrowded conditions

Mr. Fagan asserts claims against all defendants in their individual capacities based on the conditions under which he was held while incarcerated at CFCF. Specifically, he cites to being housed in a "closet-type multi-purpose room" with overcrowded conditions, and no ladders on bunk beds, desks, shelves, or cabinets for property, and where doors "could not be opened electronically by staff." DI 2 at 12.

Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components.  *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).  The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]"  *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  In general, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety.  *See Wilson*, 501 U.S. at 298-99; *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994))); *cf. Edwards v. Northampton Cnty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

To establish an Eighth Amendment violation based on the conditions of confinement, a prisoner must establish that prison officials' acts or omissions denied him "the minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (stating that the Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials provide "humane conditions of confinement.").  Such necessities include food, clothing, shelter, medical care and reasonable safety.  *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). "However, where conditions are not 'cruel and unusual' but merely 'restrictive and even harsh,'

they do not violate the Eighth Amendment but rather 'are part of the penalty that criminal offenders pay for their offenses against society.'" *Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017) (*per curiam*) (quoting *Rhodes,* 452 U.S. at 347).

The overall condition of housing multiple inmates in a cell or in a multi-purpose room does not alone establish a constitutional violation. *See North v. White*, 152 F. App'x 111, 113 (3d Cir. 2005) (*per curiam*) ("Double or triple-bunking of cells, alone, is not per se unconstitutional."). Absent any personal deprivation or harm to him, Mr. Fagan's complaints about being housed in an overcrowded, small multi-purpose room without shelves, desks, and cabinets, given the totality of the circumstances, fail to constitute the kind of serious deprivation of basic human needs required to establish an Eighth Amendment violation. *See id.; Wilson*, 501 U.S. at 305 ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."); *Lindsey v. Shaffer*, 411 F. App'x 466, 468 (3d Cir. 2011) (*per curiam*) ("The critical issue for Eighth Amendment purposes is not the number of prisoners who share facilities; rather, it is whether the alleged overcrowding has somehow harmed the prisoner."); *Walker v. George W. Hill Corr.*, No. 18-2724, 2018 WL 3430678, at *3 (E.D. Pa. July 13, 2018) (concluding that prisoner plaintiff's claims that "he was forced to share a cell with two other individuals and that he was forced to sleep on the floor inside what was described as a boat unit" and that "his sleeping area was a very unhealthy and unsanitary space two feet from the toilet bowl" failed to state a Fourteenth Amendment claim with respect to allegations of overcrowding). Mr. Fagan's constitutional

claim about being housed in a multi-purpose room with overcrowded conditions, and with no desks, shelves, or cabinets for property is, accordingly, not plausible and dismissed.[7]

His constitutional claim about the absence of ladders for bunk beds and automatically opening doors is also not plausible. The general absence of a ladder for top bunks or other safety mechanisms in a prison cell at most suggests negligence and does not give rise to a constitutional claim. *See Tindell v. City of Philadelphia*, No. 17-907, 2017 WL 3028598, at *2 (E D. Pa. July 14, 2017) (citations omitted); *see also, e.g.*, *Mikell v. Harry*, No. 16-2254, 2018 WL 501000, at *5 (M.D. Pa. Jan. 22, 2018) ("Courts have held that the absence of a safety mechanism on the top bunk in a prison cell, or the lack of a bunk bed ladder, at most suggests negligence and does not give rise to a constitutional claim as it does not rise to the level of deliberate indifference."); *Vercusky v. Purdue*, No. 15-2461, 2016 WL 7330589, at *3 (M.D. Pa. Dec. 16, 2016) ("This Court similarly concludes that Plaintiff[']s allegation that the prison Warden failed to install ladders for access to the top bunks in the SHU at FCI-Schuylkill does not amount to a cognizable constitutional violation."); *Tutora v. Sweeney*, No. 14-4458, 2014 WL 7059086, at *2 (E.D. Pa. Dec. 15, 2014) ("[T]he absence of a ladder or railing from the top bunk does not create an objectively serious condition threatening inmate safety or reflect deliberate indifference on behalf of prison officials."); *Williams v. Corizon*, No. 12-2412, 2013 WL 4787223, at *15 (E.D.

---

[7] Mr. Fagan also asserts these conditions are in violation of the Pennsylvania administrative codes, ACA, ABA, and DOJ Standards. DI 2 at 12. But noncompliance with national standards concerning minimum space requirements does not establish a constitutional violation. *Cardona v. Bledsoe*, 596 F. App'x 64, 68 (3d Cir. 2015) (allegation that double-celling violated ACA standards on adequate living space failed alone to state a plausible Eighth Amendment claim); *Bell v. Wolfish*, 441 U.S. 520, 543 n.27 (1979) (stating that "while the recommendations of these various groups [such as the ACA] may be instructive in certain cases, they simply do not establish the constitutional minima; rather, they establish goals recommended by the organization in question."). Additionally, Mr. Fagan's assertion that conditions violate Pennsylvania or federal regulations is conclusory, and he does not attempt to explain how those provisions even apply to CFCF, a City facility.

Pa. Sept. 9, 2013) ("To the extent that Plaintiff attempts to argue that Defendant City of Philadelphia is liable because they did not have ladders for all the bunk beds, such argument fails, since that is, at most, negligence, which does not demonstrate the requisite culpability for liability to attach."); *Walker v. Walsh*, No. 11-1750, 2012 WL 314883, at *5 (M.D. Pa. Feb. 1, 2012) ("[F]ailing to install safety rails on an upper bunk of a set of bunk beds that is to be exclusively utilized by adults does not constitute a condition which would pose an unreasonable risk of future injury." (internal quotation marks omitted)); *Pumphrey v. Smith*, No. 09-233, 2010 WL 4983675, at *4 (W.D. Pa. Dec. 2, 2010) ("The lack of a bunk ladder in a prison cell does not meet the stringent requirements of deliberate indifference."); *see also Franco-Calzada v. United States*, 375 F. App'x 217, 218-19 (3d Cir. 2010) (*per curiam*) (dismissing appeal as frivolous when plaintiff's constitutional claims rested on allegations that he fell from a faulty ladder attached to his top bunk, which defendants knew or should have known to be unsafe because at least two other inmates had fallen). Finally, we are unable to discern any constitutional violation arising from the use of manually locking doors in the CFCF multi-purpose room, particularly since Mr. Fagan fails to allege that he suffered any harm arising from the fact that the doors had to be locked and unlocked manually.

2. Grievance processes

Mr. Fagan also may be alleging a claim that the grievance process at CFCF was constitutionally inadequate since part of the relief he seeks is reform to the system. DI 2 at 13. This claim is also not plausible and will be dismissed. Claims based on the handling of prison grievances fail because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.

1991) (*per curiam*)). Accordingly, allegations such as those raised by Mr. Fagan predicated on failures of the grievance process or improper handling of or response to grievances do not give rise to a constitutional claim. *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).

### IV.    CONCLUSION

For the reasons stated, we will dismiss Mr. Fagan's complaint. Because an attempt to amend these claims would prove futile, the dismissal will be with prejudice. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that complaints dismissed under the Prison Litigation Reform Act should be with leave to amend "unless amendment would be inequitable or futile"). An appropriate Order will be entered separately. *See* Federal Rule of Civil Procedure 58(a).